# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP394-CR |
| COMPLETE TITLE: | State of Wisconsin, <br>             Plaintiff-Respondent, <br>       v. <br> Demone Alexander, <br>             Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 342 Wis. 2d 249, 816 N.W.2d 350
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 12, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 14, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Carl Ashley |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) <br> CROOKS, J., ABRAHAMSON, C.J., BRADLEY concur. (Opinion filed.) <br> ZIEGLER, J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief by *Hans P. Koesser* and *Koesser Law Office*, *S.C.*, Kenosha, with oral argument by *Hans P. Koesser*.


For the plaintiff-respondent, the cause was argued by *Thomas Balistreri*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP394-CR
(L.C. No. 2008CF3168)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

   **v.**

**Demone Alexander,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 12, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. We are asked to determine whether a defendant must be physically present when a judge holds an in-chambers discussion with a juror during the middle of a trial. We recognize that a defendant has a constitutional right to be present at his trial. Kentucky v. Stincer, 482 U.S. 730, 745 (1987). Whether this right to be present at trial encompasses in-chambers meetings "admits of no categorical 'yes' or 'no' answer. A conference in chambers might well constitute part of the trial depending upon what matters are discussed or passed upon. Likewise, such a conference might not be a part of

the trial in the sense of one's constitutional right to be present." Ramer v. State, 40 Wis. 2d 79, 84, 161 N.W.2d 209 (1968) (citation omitted). The test for whether a defendant's presence is required at an in-chambers hearing, or at a conference in the courtroom after the judge has emptied it of spectators, is whether his absence would deny him a fair and just hearing. Id. at 85.

¶2 The defendant, Demone Alexander, was charged with first-degree intentional homicide and his case was tried to a jury.[1] During the trial, two jurors at separate times approached the bailiff to discuss a potential bias issue. One juror stated that she knew a woman in the courtroom gallery, who turned out to be the mother of Alexander's child, and another said that he knew one of the defense's witnesses. To resolve the matter, the judge held separate in-chambers discussions with both jurors to determine the extent of the bias. Both of Alexander's attorneys and the prosecutor were present for these meetings, but Alexander was not. The court ultimately struck the jurors, over defense counsel's objections.

¶3 Alexander was convicted and sought postconviction relief, arguing that he had a constitutional and statutory right to be present during the in-chambers discussions. He argued the constitutional right is grounded in the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. The statutory right,

---

[1] The Honorable Carl Ashley presiding.

he alleged, stemmed from Wis. Stat. § 971.04(1)(c),[2] which provides that "the defendant shall be present . . . [d]uring voir dire of the trial jury." The circuit court denied the motion and the court of appeals affirmed.

¶4 We hold that the circuit court's decision to exclude Alexander from the in-chambers meetings with the jurors did not deprive Alexander of a fair and just hearing. As the United States Supreme Court has outlined, the factors a trial court should consider in determining whether a defendant's presence is required to ensure a fair and just hearing include whether the defendant could meaningfully participate, whether he would gain anything by attending, and whether the presence of the defendant would be counterproductive. United States v. Gagnon, 470 U.S. 522, 527 (1985) (per curiam). Alexander would not have been able to contribute anything to the circuit court's inquiry of the jurors, and may in fact have intimidated them if he had been present. Additionally, both of Alexander's attorneys were present at the in-chambers meetings. Alexander's absence thus did not violate his constitutional right to be present at his trial.

¶5 We also hold that Alexander's statutory right under Wis. Stat. § 971.04(1)(c) to be present during voir dire was not violated. Voir dire is a preliminary examination of whether an individual can serve on a jury. In this case, the trial had

---

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version.

already commenced and the jurors had already been selected when the bias issue arose. Section 971.04(1)(c) is thus inapplicable here. The decision of the court of appeals is affirmed.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶6 Demone Alexander was charged with first-degree intentional homicide in the shooting death of Kelvin Griffin. The facts surrounding the shooting are not at issue in this case. Instead, the questions presented center around the trial judge's separate in-chambers discussions with members of the jury, which took place outside Alexander's presence. Accordingly, we recite only the facts relating to those discussions.

¶7 Near the end of Alexander's seven-day trial, Juror 10 approached the bailiff and informed him that she knew a woman who was seated in the gallery. The trial judge then held an on-the-record meeting in his chambers with the juror. The prosecutor and both of Alexander's attorneys were present as well. At the outset of the gathering, the circuit court asked Alexander's counsel if she would be willing to "waive the appearance of Mr. Alexander for purposes of this?" The attorney replied, "We do."[3]

¶8 The court proceeded to ask the juror how she knew the woman in the gallery. Juror 10 identified the woman as "Monique," and said that "[s]he's an old friend of the family.

---

[3] Alexander had two attorneys representing him at his trial. To avoid unnecessary confusion and for the sake of brevity, we will refer to them as "counsel" where appropriate.

We grew up together." As Juror 10 further elaborated, Monique "went to school with my sister . . . . [S]he's really my sister's friend." However, due to a falling out between Monique and Juror 10's sister, Juror 10 had not seen Monique in six months. Finally, Juror 10 stated that she did not know what Monique's connection to the case was.

¶9 After Juror 10 left chambers, the court was informed that Monique had a child with Alexander. Counsel for Alexander argued that this fact was not a problem, as Juror 10 "doesn't have any idea why Monique is even here. So if she doesn't know anything about it, there's no relationship and no prejudice and no bias and no nothing." The prosecutor, though, argued that it would be "dangerous to keep her on the jury" because she might discover the connection between Monique and Alexander. The court then ordered Alexander's attorneys to talk to their client about his relationship with Monique and his knowledge of Juror 10's connection with Monique. After an off-the-record discussion with their client, counsel for Alexander confirmed that Monique "is, in fact, his baby's momma. But he has not seen her in sixteen months. He's not close to her. [And he] does not know the juror. He's never seen her before."

¶10 The court put off the decision on whether to remove Juror 10 and proceeded to address another potential juror bias issue that arose that day. The defense had just called a witness named Jesse Sawyer to dispute the statement of one of the State's witnesses who testified that Alexander gave the murder weapon to Sawyer to hide. After Sawyer finished his

5

testimony that day, Juror 33 told the bailiff that he knew Sawyer. The circuit court, repeating the process it used earlier, invited the attorneys and Juror 33 into chambers to inquire on the record as to the juror's relationship with the witness. Upon inquiry from the court, Juror 33 described his relationship with Sawyer as one based on a mutual interest in Harley-Davidson motorcycles. Sawyer does custom work on the motorcycles, Juror 33 continued, and Juror 33 would "go by his house because I'm interested in how he does the bikes because I want to purchase me a Harley-Davidson. I wanted him to do some work on my bike." Juror 33 further stated that he had known Sawyer for three years, and had seen him recently at a party and at a Harley-Davidson event. Juror 33 did not, however, consider Sawyer a personal friend, but rather an acquaintance he would go to if he needed work done on his motorcycle.

¶11 Following Juror 33's departure from chambers, the judge asked each side to state a position on whether he needed to be removed. Defense counsel argued against removal, while the prosecutor equivocated: "I'm uncomfortable with any juror knowing a witness . . . . [B]ut I'm not asking that he be struck at this time, and I reserve. If we make it to the end with 14 [jurors], I don't know what I would do at that point."[4] The court then decided it would wait until the conclusion of

---

[4] Fourteen jurors were selected so that two could be designated as alternates. If at the end of the trial all 14 jurors still remained, the circuit court planned to randomly pick two to be removed before deliberations.

Alexander's trial to determine whether it had to remove either juror.

¶12 After a weekend break, the trial resumed for closing arguments. That morning, however, Juror 10 called another juror to report that she would not be able to make it to court that day because her boyfriend had been in a car accident. Juror 10 subsequently arrived, and the judge decided to conduct another in-chambers discussion with her to ask her about the car accident and to further inquire into any potential bias resulting from her relationship with Monique. Once again the lawyers——but not Alexander——were present.

¶13 When asked by the court whether she could be impartial in light of her relationship with Monique, Juror 10 replied, "I definitely can . . . . I don't talk to her at all. It doesn't bother me. I'll be able to go ahead and directly have my own decision." The prosecutor asked her why she reported her relationship with Monique to the bailiff and Juror 10 replied, "I felt it was very important because I didn't know if she was going to try to retaliate and try to contact me and ask me about some things [about the case] or not." And in response to further questions from the prosecutor, Juror 10 said she thought Monique was somehow connected to Alexander's murder trial.

¶14 The circuit court, pointing to Juror 10's concern that Monique might "retaliate" against her, struck her from the jury. Defense counsel noted her objection on the record, and the discussion moved to Juror 33. The State requested removal and Alexander's attorney objected, stating that "I don't think

7

there's any basis on this record for him to be struck for cause." The court sided with the prosecution and removed Juror 33 for cause based on his relationship with the defense's witness.

¶15 Alexander was found guilty of first-degree intentional homicide and possession of a firearm by a felon. He subsequently filed a motion for postconviction relief, arguing that he had a constitutional and statutory right to be present when the court questioned Jurors 10 and 33.[5] According to the motion, the circuit court's in-chambers discussions with the jurors violated his due-process rights and his right to a fair and impartial jury. See U.S. Const. amends. VI, and XIV, § 1; Wis. Const. art. I, § 7. As for the statutory violation, Alexander pointed to Wis. Stat. § 971.04(1)(c), which provides that "the defendant shall be present . . . [d]uring voir dire of the trial jury." The circuit court denied the motion, reasoning that because the in-chambers conversations were not part of the jury-selection process, Alexander's constitutional and statutory rights were not violated.

¶16 Alexander appealed and the court of appeals affirmed in an unpublished opinion. State v. Alexander, No. 2011AP394-CR, unpublished slip. op. (Wis. Ct. App. May 8, 2012). The court of appeals concluded that because the in-chambers meetings with the jurors occurred after voir dire, they were permissible,

---

[5] Alexander raised other issues which are not germane to this appeal.

for Alexander's attorney "was entitled to make the strategic decision to waive Alexander's presence at the in-chambers meetings with the jurors." Id., ¶17 (citation omitted).

¶17 We granted Alexander's petition for review and now affirm his conviction, although on different grounds than the court of appeals.

## II. STANDARD OF REVIEW

¶18 This case requires us to determine whether Alexander had a constitutional or statutory right to be present during the court's in-chambers discussions with the two jurors. The interpretation and application of constitutional and statutory provisions are questions of law that we review de novo. State v. Hamdan, 2003 WI 113, ¶19, 264 Wis. 2d 433, 665 N.W.2d 785.

## III. DISCUSSION

¶19 We conclude that on the facts of this case, Alexander was not denied a fair and just hearing by virtue of his absence from the circuit court's separate in-chambers discussions with two jurors. Moreover, we hold that Alexander did not have a statutory right to attend the discussions under Wis. Stat. § 971.04(1)(c) because removal of the jurors did not occur during voir dire.

A. Alexander's Absence From the In-Chambers Hearings Did Not Violate His Constitutional Right to be Present at Trial

1. Applicable Constitutional Provisions

¶20 Both the United States and Wisconsin Constitutions contain a right to due process. The Fourteenth Amendment to the United States Constitution prevents a state from depriving "any

9

person of life, liberty, or property, without due process of law," while Article I, Section 8 of the Wisconsin Constitution reads: "No person may be held to answer for a criminal offense without due process of law . . . ." Due process guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."[6] Stincer, 482 U.S. at 745.

¶21 A criminal defendant's right to an impartial jury, on the other hand, flows from the Sixth Amendment to the U.S. Constitution and Article I, Section 7 of the Wisconsin Constitution. State v. Mendoza, 227 Wis. 2d 838, 847, 596 N.W.2d 736 (1999). The Sixth Amendment, in relevant part, states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." Similarly, Article I, Section 7 of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense

---

[6] A defendant's right to be present at his trial is also rooted in the Sixth Amendment's Confrontation Clause. United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam). But in a situation (such as the one at issue in this case) where the defendant is not confronting witnesses or evidence against him, the right is located in the Due Process Clause of the Fourteenth Amendment. Kentucky v. Stincer, 482 U.S. 730, 745 (1987); United States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993).

shall have been committed . . . ." When "the language of [a] provision in the state constitution is virtually identical to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution." State v. Agnello, 226 Wis. 2d 164, 180, 593 N.W.2d 427 (1999) (internal quotation marks and citations omitted); see also State v. Schaefer, 2008 WI 25, ¶62, 308 Wis. 2d 279, 746 N.W.2d 457 (determining that the compulsory-process clauses in the Sixth Amendment and Article I, Section 7 of the Wisconsin Constitution are cognate provisions). Wisconsin courts may also look for guidance from lower federal courts in interpreting cognate constitutional provisions.[7] See Rao v. WMA Secs., Inc., 2008 WI 73, ¶¶47-50, 310 Wis. 2d 623, 752 N.W.2d 220.

### 2. Alexander's Right to be Present at Trial Was Not Violated

¶22 An accused has a constitutional right "to be present during his trial, and his right to be present at the trial includes the right to be present at proceedings before trial at

---

[7] "Cognate provision" refers to the parts of a state constitution that are modeled on the federal Bill of Rights. Stanley E. Adelman, Towards an Independent State Constitutional Jurisprudence or How to Disagree with the Supreme Court and How Not To, 2002 Ark. L. Notes 1, 1 ("State constitutions typically contain 'cognate' provisions which are based on and worded similarly, if not identically, to the various guarantees of liberty contained in the Bill of Rights of the United States Constitution.") (footnote omitted).

which important steps in a criminal prosecution are often taken." Leroux v. State, 58 Wis. 2d 671, 689, 207 N.W.2d 589 (1973) (emphasis added) (citation omitted). As for conferences during the trial, we have "recommended" that these "rarely" be held without the defendant present. Id. at 690 (internal quotation marks and citation omitted). "However, the presence of [a] defendant is constitutionally required only to the extent a fair and just hearing would be thwarted by his absence. . . . The constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'" Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)). Furthermore, "whether the defendant has a right to attend a conference in chambers . . . admits of no categorical 'yes' or 'no' answer. A conference in chambers might well constitute part of the trial depending upon what matters are discussed or passed upon. Likewise, such a conference might not be part of the trial in the sense of one's constitutional right to be present." Ramer, 40 Wis. 2d at 84.

¶23 We acknowledge that some of the language in our case law has been in tension with the concept that a defendant does not have an absolute constitutional right to attend every in-chambers conference. For example, in State v. Burton, 112 Wis. 2d 560, 563, 334 N.W.2d 263 (1983), the circuit court communicated twice with the jury—outside the presence of either the prosecutor or defense counsel—during deliberations. Id. The discussions concerned the process for turning over the

12

sealed verdict to the court as well as scheduling dinner and hotel arrangements in the event the jury could not reach a verdict by the end of the day. Id. at 563-64. We held that "communication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present." Id. at 570.

¶24 This holding, however, was in direct contradiction to our decision just three years earlier in May v. State, 97 Wis. 2d 175, 293 N.W.2d 478 (1980). In that case, during deliberations the jury asked the circuit court the following question related to the charged offense of delivering a controlled substance as a party to a crime: "'By withdrawing from a conspiracy has a person removed themselves (sic) from aiding and abetting the commission of a crime?'" Id. at 180 (quoting the jury note) ("sic" in original). The court answered the question "no," without informing the defendant or his attorney. Id. Two issues related to this incident were raised on appeal: (1) did the circuit court err in answering the question in the absence of counsel?; and (2) did the circuit court err in answering the question in the absence of the defendant? Id. As to the first question, we held that because "there was no waiver in this case, counsel should have been given the opportunity to confer with the court about the appropriate response to be given to the jury's question. It was error for the trial court to answer the question without

13

notifying counsel." Id. at 183-84. On the second question, however, we held that, "[a] fair and just trial was not thwarted by the court's answering that question outside the defendant's presence. The question posed by the jury dealt with a question of law and the trial court answered it correctly." Id. at 186. Additionally, "[n]othing transpired which was prejudicial or harmful to the defendant's cause, especially in view of the fact that the trial court subsequently reread to the jury the instructions concerning party to a crime." Id. All that due process and Wis. Stat. § 971.04 required was that the defendant's attorney be present. Id. at 185-88.

¶25 As Burton and May are in conflict, we must overrule one of them. We now hold that May is more soundly reasoned and more consistent with the precedent of this court and that of the U.S. Supreme Court. As we have stated, "the presence of [a] defendant is constitutionally required only to the extent a fair and just hearing would be thwarted by his absence . . . . The constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'" Leroux, 58 Wis. 2d at 690 (quoting Snyder, 291 U.S. at 106-07). Adopting a requirement that a defendant must always be present whenever a court speaks with members of the jury would render the above-quoted language from Leroux meaningless. More importantly, it would impose an unreasonable and unnecessary burden upon trial judges, who would be forced to ensure the presence of defendants at meetings where they had nothing to contribute to their own cause, and where their presence could in

14

fact be highly counterproductive. The Constitution does not require criminal proceedings to be undermined so significantly in this way, and for so little benefit to the defendant. That is why our better-reasoned case law provides that whether a defendant must be present when a court meets with members of the jury "admits of no categorical 'yes' or 'no' answer." Ramer, 40 Wis. 2d at 84. All that is required when the court communicates with members of the jury is that the defendant's attorney be present. See May, 97 Wis. 2d at 183-84.

¶26 Our carelessness in Burton also led this court astray in State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, a case Alexander relies on heavily. In that case, the issue once again was the propriety of "the circuit court's ex parte communications with the jury during deliberations outside the presence of the defendant and without notice to or consultation with the defendant." Id., ¶23. We began our analysis on this issue by quoting the U.S. Supreme Court edict that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Id., ¶39 (quoting Illinois v. Allen, 397 U.S. 337, 338 (1970) (alteration in original)). The Confrontation Clause, however, does not apply when the defendant is not confronting witnesses or evidence against him. United States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993). As Anderson centered on the defendant's right to be present when the trial court spoke with the jury during deliberations, its reliance upon a Confrontation Clause case was incorrect.

15

¶27 We then moved to a discussion of Burton and Williams v. State, 40 Wis. 2d 154, 161 N.W.2d 218 (1968), and concluded that "an accused has a right to be present whenever any substantive step is taken in the case." Anderson, 291 Wis. 2d 673, ¶42 (emphasis added). This court never defined "substantive step," but nonetheless concluded——ipse dixit——that "[a] substantive step in a trial for which an accused has a right to be present includes the circuit court's communications with the jury during deliberations." Id., ¶43 (footnote omitted). For support of this statement we cited to Burton and a slew of court of appeals cases relying on that decision. Anderson, 291 Wis. 2d 673, ¶43 n.20. At the end of that string cite, though, we tacitly acknowledged but did not confront the fact that May and Burton conflicted. Anderson, 291 Wis. 2d 673, ¶43 n.20.

¶28 What is more, Anderson never cited to Leroux, nor Ramer, which made clear that a defendant has a due-process right to be present at an in-chambers meeting only if his absence would deny him a "fair and just hearing." See Leroux, 58 Wis. 2d at 690; Ramer, 40 Wis. 2d at 85. With a sleight of its hand, Anderson changed what should have been a fact-specific due-process inquiry (did the communication between the judge and jury deny the defendant a fair and just hearing?) into an absolute Confrontation Clause right to be present whenever the trial court speaks with members of the jury. We thus withdraw all language from Anderson intimating such a right. See 291 Wis. 2d 673, ¶¶35-44.

16

¶29 Federal case law also supports our conclusion that Burton and Anderson are outliers. The U.S. Supreme Court has said that the "mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and juror, nor is there a constitutional right to have a court reporter transcribe every such communication." Gagnon, 470 U.S. at 526 (internal quotation marks and citation omitted). And in a case where the defendants were excluded from a conference concerning whether to dismiss a group of jurors, the United States Court of Appeals for the Third Circuit put it persuasively and succinctly: "It is clear that there is no constitutional right for a defendant to be present at a conference in chambers concerning dismissal of a juror." United States v. Provenzano, 620 F.2d 985, 997-98 (3d Cir. 1980); see also McCoy, 8 F.3d at 497. All that the Constitution requires at such a conference is the presence of defense counsel. See Ellis v. Oklahoma, 430 F.2d 1352, 1355 (10th Cir. 1970).

### 3. Alexander Received a Fair and Just Hearing

¶30 While Alexander had no automatic constitutional right to be present during the circuit court's in-chambers discussions with Jurors 10 and 33, his presence was required "to the extent a fair and just hearing would be thwarted by his absence." Leroux, 58 Wis. 2d at 690 (citation omitted). Factors a trial court may consider in determining whether a defendant's presence is required at an in-chambers conference with a juror to ensure

17

a "fair and just hearing" include whether the defendant could meaningfully participate, whether he would gain anything by attending, and whether the presence of the defendant would be counterproductive.[8] See Gagnon, 470 U.S. at 527. In a situation such as the present case, where a judge is conducting an in-chambers meeting to determine whether a juror is biased based on an account of the juror's connection to the case, the presence of the defendant would in no way help to resolve the issue and may actually hinder the proceeding. There was presumably nothing Alexander could have contributed on either the subject of Juror 10's relationship with Monique or Juror 33's association with Sawyer, as Alexander has never alleged that he was aware of these connections. In fact, both jurors may very well have been intimidated and deterred from speaking forthrightly about their potential bias with Alexander seated only a few feet away. Cf. United States v. Bertoli, 40 F.3d 1384, 1397 (3d Cir. 1994) ("[W]e doubt whether the jurors would have been as comfortable discussing their conduct [in chambers] had [the defendant] been present.") (footnote omitted). This concern is particularly acute in Juror 10's case, as she was explicitly afraid of "retaliation" from a woman who turned out to be the mother of Alexander's child. Additionally, Alexander's attorneys were permitted to leave chambers to speak with him whenever they needed his input. Alexander was thus not

---

[8] This list is not exhaustive, as future cases will present circuit courts with facts that cannot be anticipated.

18

denied a "fair and just hearing" by virtue of his absence from the judge's chambers.[9]

### B. Wis. Stat. § 971.04(1)(c) Does Not Apply

¶31 Alexander also asserts that he had a right to be present at the in-chambers meetings based on Wis. Stat. § 971.04(1)(c), which mandates that a defendant "be present . . . [d]uring voir dire of the trial jury." "Voir dire" is not defined in the statute, but Black's Law Dictionary defines it as "[a] preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury." 1710 (9th ed. 2009) (emphasis added). Other sources define it similarly. See James H. Gold, Voir Dire: Questioning Prospective Jurors on Their Willingness to Follow the Law, 60 Ind. L.J. 163, 163 (1985) ("During the pre-trial jury selection process known as voir dire, criminal defendants often seek to question prospective jurors as to their willingness and ability to follow specific rules of law.") (footnote omitted); Robert E. Larsen, Navigating the Federal Trial, § 4:1 (2012 ed.) ("Voir dire is a preliminary

---

[9] Rather than grappling with any of the factors articulated by the Supreme Court in United States v. Gagnon, 470 U.S. 522, 527 (1985) (per curiam) to determine whether Alexander was denied a fair and just hearing, Justice Crooks nakedly asserts that "Alexander's presence at these conferences was critical to the fairness of the proceedings." Justice Crooks's concurrence, ¶71. Justice Crooks does not answer what Alexander could have contributed to the in-chambers conferences, nor does he address the threat that would have been posed to the jurors' candor had they been forced to discuss their potential bias issues with an accused murderer seated a few feet away. See Gagnon, 470 U.S. at 527.

examination of potential jurors by a judge or lawyer to determine whether the prospect is qualified and suitable to serve on a jury."). Here, the examination of Jurors 10 and 33 occurred <u>during</u> the trial and <u>after</u> both had been selected as jurors. The in-chambers hearings were thus not part of voir dire. The court of appeals cases relied on by Alexander supporting the proposition that a defendant has a right to be present during in-chambers voir dire are as a result inapposite. <u>See</u> <u>State v. David J.K.</u>, 190 Wis. 2d 726, 735-36, 528 N.W.2d 434 (Ct. App. 1994) (holding that the defendant had a constitutional and statutory right to be present when the circuit court privately questioned three jurors in chambers during the middle of voir dire); <u>see also</u> <u>State v. Tulley</u>, 2001 WI App 236, ¶¶6, 10, 248 Wis. 2d 505, 635 N.W.2d 807 (reaffirming <u>David J.K.</u>).[10]

---

[10] Wisconsin Stat. § 971.04(1)(b) protects a defendant's right to be present "[a]t trial." Justice Crooks contends that Alexander had a right to attend the in-chambers discussions pursuant to that provision. Justice Crooks's concurrence, ¶58. However, Alexander did not make that argument before this court. We therefore do not address the question. <u>See</u> <u>State v. Johnson</u>, 153 Wis. 2d 121, 124, 449 N.W.2d 845 (1990) ("This court will not consider the issues respondent wishes to have considered unless they are asserted in the brief and fully discussed in that brief to this court.").

## IV. CONCLUSION

¶32 We hold that the circuit court's decision to exclude Alexander from the in-chambers meetings with the jurors did not deprive Alexander of a fair and just hearing. Alexander would not have been able to contribute anything to the circuit court's inquiry of the jurors, and may in fact have intimidated them if he had been present. Additionally, both of Alexander's attorneys were present at the in-chambers meetings. Alexander's absence thus did not violate his constitutional right to be present at his trial.

---

Nonetheless, Justice Crooks considers the issue sufficiently pled because Alexander's brief here cites to State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, and "Anderson considers both a defendant's statutory and constitutional right to be present 'at trial.'" Justice Crooks's concurrence, ¶47. True enough. But Anderson also considered "whether the circuit court committed error by failing to make a record of or preserve a record of its statements or comments to the jury relating to the case" under Wis. Stat. § 805.13, 291 Wis. 2d 673, ¶¶77-78, and "whether the circuit court erred by refusing the jury's requests to have the defendant's and the victim's in-court testimony read to it while allowing the jury during deliberations to see and hear the victim's videotaped interview." Id., ¶82. Alexander cited 21 other cases in the same brief, each of which presented separate issues. It would be aberrant indeed to consider an issue raised because a case cited in a litigant's brief mentioned the particular issue. Appellate courts have higher pleading standards than this. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . , or else forever hold its peace.") (internal quotation marks and citation omitted).

21

¶33  We also hold that Alexander's statutory right under Wis. Stat. § 971.04(1)(c) to be present during voir dire was not violated.  Voir dire is a preliminary examination of whether an individual can serve on a jury.  In this case, the trial had already commenced and the jurors had already been selected when the bias issue arose.  Section 971.04(1)(c) is thus inapplicable here.

*By the Court.*—The decision of the court of appeals is affirmed.

¶34 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I agree with and join Justice Crooks' concurrence.

¶35 I write separately to address the majority opinion's misreading of Wis. Stat. § (Rule) 971.04(1)(c), majority op., ¶¶5, 19, 38, 40, and to explain that Wis. Stat. § (Rule) 971.04(1)(c) has to be read to give a defendant the right to be present "when the jury is being selected." Here is why.

¶36 Wisconsin Stat. § 971.04(1)(c) was created by the legislature.[1] When created, Wis. Stat. § 971.04(1)(c) read as follows:

> 971.04 Defendant to be present. (1) Except as provided in subs. (2) and (3), <u>the defendant shall be present</u>:
>
> . . . .
>
> (c) <u>At all proceedings when the jury is being selected</u> (emphasis added).

¶37 In 1997, in the exercise of its rule-making powers and at the request of the Judicial Council, the Supreme Court (by Supreme Court Order 96-08, eff. July 1, 1997) adopted numerous provisions relating to juror use and management and amended the legislatively created Wis. Stat. § (Rule) 971.04(1)(c) to read as follows:

> 971.04 Defendant to be present. (1) Except as provided in subs. (2) and (3), <u>the defendant shall be present</u>:
>
> . . . .
>
> (c) <u>During voir dire of the trial jury</u> (emphasis added).

---

[1] § 63, ch. 255, Laws of 1969 (eff. July 1, 1970).

1

¶38 As a result of the Supreme Court's amendment of Wis. Stat. § 971.04(1)(c), a defendant's right to be present is stated in terms of "voir dire" instead of "when the jury is being selected." "Voir dire" ordinarily refers to the selection of jurors before trial. If the term "voir dire" is given this limited meaning, the Court's change of the legislative language curtailed the defendant's legislatively granted right to be present at <u>all</u> proceedings when the jury is being selected.

¶39 Such a curtailment of a defendant's legislatively granted right arguably exceeds the Court's powers. The Supreme Court may not promulgate rules that "abridge, enlarge or modify the substantive rights of any litigant." Wis. Stat. § 751.12(1).

¶40 Furthermore, it is obvious that the Court did not intend the rule to modify a defendant's substantive rights.[2] In changing the language of Wis. Stat. § 971.04(1)(c), the court did not have in mind a proceeding in which a challenge is made to a juror mid-trial, as in the present case; such a challenge is not a usual occurrence.

¶41 That the Supreme Court (and the Judicial Council, which petitioned for the change) did not mean to limit a defendant's rights is clearly evidenced in the Judicial Council Note appended to Supreme Court Order 96-08.

---

[2] The court of appeals stated that it "perceive[d] no substantive change in the statute" as a result of the rule modification. <u>State v. Harris</u>, 229 Wis. 2d 832, 839 n.3, 601 N.W.2d 682 (Ct. App. 1999).

¶42 The Judicial Council's proposed change in the language of Wis. Stat. § 971.04(1)(c) explains that the change was meant to clarify that a defendant has a right to be present only when "the jurors themselves were present" and not during the initial selection of names from lists, which ordinarily occurs before the defendant is charged or the trial jury is selected. [3]

¶43 In light of the legislatively created right of a defendant to be present at all proceedings when the jury is being selected and the reason proffered by the Judicial Council for the change of language in Wis. Stat. § 971.04(1)(c) proposed to the Court, I conclude that the language of Wis. Stat. § (Rule) 971.04(1)(c) (incorporating the Supreme Court rule) has to be interpreted to have the same meaning as the legislatively created right of a defendant to be present at all proceedings when the jury is being selected.

¶44 In-chambers proceedings with jurors present to determine which jurors will continue to serve on the jury, like the one in the instant case, are proceedings during which the jury is being selected; in my opinion, the defendant had a statutory right to be present.

---

[3] Judicial Council Note, 1996, Wis. Stat. § 971.04:

This statute [sub. (1)(c)] defines the proceedings at which a criminal defendant has the right to be present. The prior statute's [sub. (1)(c)] reference to "all proceedings when the jury is being selected" was probably intended to include only those at which the jurors themselves were present, not the selection of names from lists which occurs at several stages before the defendant is charged or the trial jury picked.

¶45 With this explication of Wis. Stat. § (Rule) 971.04(1)(c), I join Justice Crooks' concurring opinion.[4]

---

[4] I concur in the mandate because here the defendant chose to waive his right (through counsel and his own actions) to be present when the jury was being selected <u>during</u> trial. Wis. Stat. § 971.04(3). The instant case does not present the situation in which a defendant voluntarily absents himself during jury selection <u>before</u> trial. For a discussion of this issue that is not presented in the instant case, see <u>State v. Koopmans</u>, 210 Wis. 2d 670, 678-79, 563 N.W.2d 528 (1997); <u>State v. Harris</u>, 229 Wis. 2d 832, 601 N.W.2d 682 (Ct. App. 1999); <u>State v. Dwyer</u>, 181 Wis. 2d 826, 512 N.W.2d 233 (Ct. App. 1994).

¶46 N. PATRICK CROOKS, J. *(concurring).* Alexander had both a statutory and a constitutional right to be present at each of the in-chambers conferences that occurred with sitting jurors during his trial for the purpose of determining the composition of the jury. His rights were waived for him by his counsel and by his own actions in voluntarily absenting himself. The Wisconsin legislature gave him the statutory right to be present "at trial,"[1] and the in-chambers conferences in question clearly occurred "at trial." Additionally, Alexander had a constitutional right of due process to be present at the in-chambers conferences because the circumstances of this case put it into the category of cases where "a fair and just hearing would be thwarted by his absence."[2]

¶47 I write separately to address a statutory requirement that entitles a defendant to be present in a judge's chambers when the judge communicates with members of the jury where, as in this case, that communication is part of a determination of which jurors will continue to serve on the jury. It would seem disingenuous for the court not to consider Wis. Stat. § 971.04(1)(b) when discussing whether Alexander has a statutory right to be present at the in-chambers conferences at issue

---

[1] Wis. Stat. § 971.04(1)(b). All citations to the Wisconsin Statutes reference the 2011-2012 version.

[2] Snyder v. Massachusetts, 291 U.S. 97, 108 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964).

under Section 971.04. Counsel for Alexander relied on State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, in both his brief and at oral argument. Anderson considers both a defendant's statutory and constitutional right to be present "at trial."

¶48 The statute at issue today is not complicated; it simply provides a defendant with the right to be present at trial. In fact, the State agreed that the in-chambers discussions in question happened "at trial." The definition of what constitutes "at trial" is settled and uncontroversial, and it certainly encompasses the in-chambers conferences at issue in this case.

¶49 The majority errs in concluding that Alexander had no constitutional right to be present at the in-chambers conferences at issue. In doing so, it abandons principles articulated in State v. Anderson,[3] which is a longstanding, well-reasoned precedent from this court. An in-chambers conference that deals with the ability of sworn jurors to continue to serve on the jury is an exceedingly important occurrence in a criminal trial, and a defendant's absence from it could frustrate his or her ability to have a fair and just hearing. Therefore, I would hold that Alexander had a constitutional due process right to be present at the in-chambers conferences at issue.

¶50 Even though Alexander had both a statutory and constitutional right to be present at all of the in-chambers

---

[3] State v. Anderson, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74.

discussions concerning an individual juror's ability to remain on the jury, he chose to waive those rights through counsel and through his own actions. Therefore, the court of appeals correctly denied Alexander's motion for a new trial, and I respectfully concur.

I. ALEXANDER'S STATUTORY RIGHT

¶51 Wisconsin Stat. § 971.04 provides a defendant the right to be present during certain enumerated proceedings, at trial, and at sentencing.[4] This statutory right clearly includes a right to be present at trial and at voir dire.

---

[4] Wis. Stat. § 971.04 provides:

(1) Except as provided in subs. (2) and (3), the defendant shall be present:

(a) At the arraignment;

(b) At trial;

(c) During voir dire of the trial jury;

(d) At any evidentiary hearing;

(e) At any view by the jury;

(f) When the jury returns its verdict;

(g) At the pronouncement of judgment and the imposition of sentence;

(h) At any other proceeding when ordered by the court.

(2) A defendant charged with a misdemeanor may authorize his or her attorney in writing to act on his or her behalf in any manner, with leave of the court, and be excused from attendance at any or all proceedings.

3

¶52 We have interpreted the language in Wis. Stat. § 971.04 and explicitly held that the statute provides a defendant with enumerated statutory rights and further explains when a defendant may voluntarily absent himself or herself. State v. Koopmans, 210 Wis. 2d 670, 679, 563 N.W.2d 528 (1997). In Koopmans, the court concluded that the use of "shall" in the statutory language means "mandatory" unless one of the statutory exceptions found in Section 971.04(2)-(3) applies.[5] In other

---

(3) If the defendant is present at the beginning of the trial and thereafter, during the progress of the trial or before the verdict of the jury has been returned into court, voluntarily absents himself or herself from the presence of the court without leave of the court, the trial or return of verdict of the jury in the case shall not thereby be postponed or delayed, but the trial or submission of said case to the jury for verdict and the return of verdict thereon, if required, shall proceed in all respects as though the defendant were present in court at all times. A defendant need not be present at the pronouncement or entry of an order granting or denying relief under s. 974.02, 974.06, or 974.07. If the defendant is not present, the time for appeal from any order under ss. 974.02, 974.06, and 974.07 shall commence after a copy has been served upon the attorney representing the defendant, or upon the defendant if he or she appeared without counsel. Service of such an order shall be complete upon mailing. A defendant appearing without counsel shall supply the court with his or her current mailing address. If the defendant fails to supply the court with a current and accurate mailing address, failure to receive a copy of the order granting or denying relief shall not be a ground for tolling the time in which an appeal must be taken.

[5] Wisconsin Stat. § 971.04(2) provides an exception for misdemeanor charges and is inapplicable to this case.

4

words, the use of "shall" in Section 971.04 conveys a right to a defendant to be present at his or her trial.[6]

¶53 As the majority opinion outlines, the circuit judge met with two sitting jurors separately and in chambers toward the end of Alexander's trial. All of these conferences took place in the presence of the Assistant District Attorney and defense counsel, but Alexander was not present for any of the conferences. In the first in-chambers conference, the circuit judge questioned Juror 10 about her relationship with a woman that the juror had recognized in the courtroom's gallery. The second in-chambers conference involved Juror 33. After observing a particular witness's testimony, this juror indicated that he and the witness were acquainted. In a third in-chambers conference, the court posed additional questions to juror 10 regarding her relationship with the woman she knew who had been observing the trial. All three of the conferences occurred after the jury had been sworn and, in fact, dealt with questions surrounding whether the two particular sitting jurors could continue their jury service.

¶54 The separate in-chambers conferences with two sitting jurors at issue today certainly took place during Alexander's trial. We have previously defined the meaning of trial for the purposes of Wis. Stat. § 971.04(1)(b). State v. Anderson, 2006

---

[6] Whether Alexander waived his right to be present at trial ultimately depends on whether he "voluntarily absent[ed] himself" from his trial as permitted by Wis. Stat. § 971.04(3). I am satisfied that Alexander did, in fact, voluntarily absent himself from the in-chambers conferences at issue here.

WI 77, ¶42, 291 Wis. 2d 673, 717 N.W.2d 74. In Anderson, the court defined trial as beginning with "the commencement of jury selection" and going "through the final discharge of the jury and at any time an action is taken affecting the accused." Id. (citing Williams v. State, 40 Wis. 2d 154, 160, 161 N.W.2d 218 (1968)); see also State v. Miller, 197 Wis. 2d 518, 521-22, 541 N.W.2d 153 (Ct. App. 1995) ("[I]n a jury trial, 'the beginning of the trial' occurs when jeopardy attaches; i.e., 'when the selection of the jury has been completed and the jury sworn.'") and Wis. Stat. § 972.07(2) (explaining that jeopardy attaches "when the selection of the jury has been completed and the jury sworn"). These definitions vary slightly, but both clearly comport with the common understanding of the meaning of a trial. In addition, both definitions squarely place the in-chambers conferences at issue, which occurred after the jury had been sworn in and before the jury had been discharged, as occurring during Alexander's trial. Furthermore, the State's brief agreed that the in-chambers conferences at issue occurred "at trial" within the meaning of Section 971.04(1)(b).

¶55 We have never held that Wis. Stat. § 971.04(1)(b) does not or cannot encompass circumstances where a circuit court communicates with individual members of the jury for purposes of determining whether these individual jurors will remain on the jury. In May v. State, 97 Wis. 2d 175, 293 N.W.2d 478 (1980), this court considered whether Section 971.04 requires a defendant's presence for the court to respond to questions posed by a deliberating jury. The jury's question concerned the

6

"withdrawing from a conspiracy." Id. at 180. May held that "the communication between the judge and jury related to a question of law, and therefore the defendant's absence at the time of the communication did not result in a non-compliance with the provisions of sec. 971.04." Id. at 188.

¶56 The holding in May simply provides that a defendant's statutory right to be present during trial does not extend to communications between a judge and juror or jury when that communication relates to a pure question of law submitted to the court by a deliberating jury, and thus May is inapplicable to this case. Here, the in-chambers conferences that occurred between the circuit judge and the individual jurors did not relate to a pure question of law. While the in-chambers conferences at issue in this case could be viewed as presenting a mixed question of law and fact to the circuit judge, the conferences did not concern a pure question of law and did not originate from the deliberating jury. Therefore, May is clearly not controlling in this case.

¶57 The facts in May can be further distinguished from the circumstances of this case. As noted, in May the court applied Wis. Stat. § 971.04 to communications between a court and a deliberating jury regarding a pure question of law. In contrast, the case at hand deals with three in-chambers conferences each with an individual sitting juror to consider the appropriateness of each such juror continuing his or her jury service. The communications between the judge and the deliberating jury in May regarding a pure question of law merely

7

required the judge to communicate a yes or no answer to the jury. In contrast, the in-chambers conferences at issue today relate to the composition of the jury, an issue of great importance to any defendant. Communications between a judge and juror(s) that could affect the jury's composition are distinct from communications between a judge and a deliberating jury relating to a pure question of law. These factual distinctions further support the conclusion that the statutory limitation presented in May should not extend to this case.

¶58 I agree with the State that the in-chambers discussions with jurors at issue occurred "at trial" for purposes of Wis. Stat. § 971.04. I would therefore hold that a defendant has a clear statutory right under Section 971.04 to be present at in-chambers discussions with jurors that occur during the defendant's trial when those in-chambers conferences concern the appropriateness of sitting jurors continuing their jury service.

¶59 While Wis. Stat. § 971.04(1)(b) provides a defendant with a statutory right to be present at trial, which encompasses all of the in-chambers conferences at issue here, there is a statutory exception to this right that is applicable to this case. Under Wis. Stat. § 971.04(3) a defendant may voluntarily absent himself or herself from trial, as long as he or she was present at the start of the trial. Here, the record indicates that Alexander did, in fact, voluntarily absent himself from all three in-chambers conferences.

¶60 The record indicates that Alexander knew about each of the in-chambers conferences that occurred with the two jurors. In addition, there is no indication that Alexander objected to being absent from any of the conferences. Defense counsel represented Alexander in each of the conferences and during the first in-chambers conference waived the defendant's presence when asked by the circuit judge. A similar colloquy between the circuit judge and Alexander's attorney does not appear on the record in reference to either of the other in-chambers conferences; however, there is no indication that Alexander asserted his right to be present in the second or third conference.

¶61 The record indicates that Alexander's attorney conferred with him privately in reference to the in-chambers conference with Juror 10. Additionally, the record reflects that Alexander's attorney informed him of the information discussed in the first and second in-chambers conferences. Although the record does not disclose Alexander's conversations about the third in-chambers conference with his attorney, there is no indication that Alexander did anything other than voluntarily absent himself from the third in-chambers conference, just as he had for the prior two conferences. Strong inferences to that effect can properly be drawn from the facts of record.

¶62 Although I would hold that Alexander had a statutory right to be present at the in-chambers conferences that took place during his trial, I believe the record demonstrates that

9

Alexander waived his statutory right by voluntarily absenting himself knowing that his counsel would be present.

## II. ALEXANDER'S CONSTITUTIONAL RIGHT

¶63 As the majority opinion indicates, the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution both provide a defendant with a right to be present at trial. Majority op. ¶20. The United States Supreme Court has characterized a defendant's due process right as a right to be present at trial where "a fair and just hearing would be thwarted by his absence." Snyder v. Massachusetts, 291 U.S. 97, 108 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964). I write separately to emphasize that an in-chambers conference that deals with the ability of sworn jurors to continue to serve on the jury is an exceedingly important occurrence in a criminal trial, and a defendant's absence from it could frustrate his or her ability to have a fair and just hearing. Therefore, I would hold that Alexander had a constitutional due process right to be present at the in-chambers conferences at issue but that he ultimately waived that right.

¶64 Wisconsin case law recognizes that a defendant may have a due process right to be present during an in-chambers conference depending on what is discussed during the conference. Ramer v. State, 40 Wis. 2d 79, 84-85, 161 N.W.2d 209 (1968). In Ramer, this court held that a defendant's due process right to be present at trial did not extend to proceedings that involved

10

questions of law because fairness would not be thwarted by a defendant's absence at proceedings that involved pure questions of law. See id. at 85; see also May, 97 Wis. 2d at 186 (providing that a fair and just trial occurred even though the court answered a question of law from the jury in the defendant's absence). In doing so, however, this court has also stated "that conferences of the court and attorneys outside the presence of the accused should be rarely held during the trial." Ramer, 40 Wis. 2d at 85 (emphasis added).

¶65 Here, the in-chambers conferences did not deal with any questions of law. Instead these conferences pertained to the appropriateness of sitting jurors continuing to serve on the jury. The conferences at issue are quite unlike the questions of law that the court answered outside of the defendant's presence in Ramer and May. I would, consistent with Anderson, hold that a defendant has a constitutional due process right to be at in-chambers conferences dealing with the continuing service of sitting jury members that could ultimately affect the composition of the jury. These types of conferences could result in an unjust or unfair trial if held without the defendant's presence, unless the defendant has waived his or her constitutional right to be present.

¶66 In Anderson, 291 Wis. 2d 673, ¶37, this court also addressed a defendant's constitutional right to be present at his or her criminal trial. Specifically, we confronted the issue of whether communication between the circuit court and a deliberating jury, outside the presence of the defendant,

11

violated the defendant's constitutional right to be present at his trial. Id. at ¶¶35-40. The communication between the circuit judge and the deliberating jury involved numerous questions from the jury regarding exhibits and the possibility of having witness testimony read back to them. Id. at ¶10-19. In Anderson, we held that both the defendant's constitutional and statutory rights to be present at trial were violated when the judge communicated with the deliberating jury outside of the defendant's presence. Id. at ¶36. In reaching our decision on the constitutional issue, this court relied on the constitutional rights granted to a defendant through both the Confrontation Clause and the Due Process Clause. Id. at ¶38 ("An accused's constitutional right to be present derives from the right to be heard and confront witnesses and from the accused's right to due process.").[7]

¶67 The majority unnecessarily abandons well-reasoned precedent set forth in Wisconsin case law to reach its

---

[7] In doing so, we drew support from the United States Supreme Court. State v. Anderson, 291 Wis. 2d 673, ¶38 n.13, ¶39 (citing United States v. Gagnon, 470 U.S. 522, 526 (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.") (citations omitted); Illinois v. Allen, 397 U.S. 337, 338 (1970)("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). We also relied upon the United States Constitution, as well as the Wisconsin Constitution. Id. at ¶38 ("The constitutional right to be heard and confront witnesses appears in the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution." (footnotes omitted)).

conclusion today. Specifically, the majority casts aside longstanding precedent from Anderson and concludes that State v. Burton, 112 Wis. 2d 560, 334 N.W.2d 263 (1983), a case that Anderson relied upon, must be overruled.[8] Its conclusion that Burton and parts of Anderson must be overruled to decide the case at issue is misguided and unnecessary to the court's holding.

¶68 Neither Anderson nor Burton need be overturned to reach a decision in this case. Both cases, in fact, are factually distinct from the issue we have been asked to decide. Both Anderson and Burton dealt with questions surrounding a defendant's right to be present when a judge communicates with a deliberating jury. In contrast, this case deals with a

---

[8] The majority's conclusion that State v. Burton must be overruled is based on a supposed conflict between Burton and May, that the majority cites, but does not explain. Considering the factual differences between these two cases, no conflict actually exists. In Burton, our holding that constitutional error occurred when the circuit judge communicated with a deliberating jury stems from our concern with the judge in that case repeatedly entering the jury room outside the presence of the defendant or defendant's counsel. A judge's presence in the jury room outside the defendant's presence could easily cause unfairness that would result in a violation of the defendant's due process rights.

In contrast, in May v. State, 97 Wis. 2d 175 (1980), while recognizing that an accused has the right under the Wisconsin Constitution and the United States Constitution to be present during her or her trial, we held that there was no reversible error when the judge communicated an answer to a question of law to a deliberating jury outside of the defendant's presence. In May, the judge simply communicated a yes or no answer to the jury by note and did not enter the jury room or communicate anything other than an answer to a question of law. Considering these factual distinctions, it is easy to see how this court found a constitutional violation in Burton, but not one in May.

factually distinct situation involving communications between a court and sitting jury members concerning the appropriateness of allowing each one to continue to serve as a member of the jury. Due to this factual distinction, there is absolutely no need to overrule Burton, and certainty we do not have to overrule or withdraw portions of Anderson[9] to decide the case at hand. We should refrain from unnecessarily overturning well-established and well-reasoned precedent.

¶69 Finally, the majority is persuaded by United States v. Provenzano, 620 F.2d 985, 997-98 (3d Cir. 1980), which found that "there is no constitutional right for a defendant to be present at a conference in chambers concerning dismissal of a juror." (emphasis omitted). Such an approach has not been followed by other federal circuit courts.

¶70 I emphasize that the approach taken by several other courts——one that allows for the possibility that a defendant's absence from communications between a judge and juror or jury could result in a constitutional violation if "a fair and just hearing would be thwarted by [the defendant's] absence"——is the better-reasoned case law. See Verdin v. O'Leary, 972 F.2d 1467, 1482 (7th Cir. 1992) ("[I]f Mr. Verdin had a constitutional right to be present at the exchange [between the judge and the jury], it stemmed from his due process right to be present

---

[9] It should be noted that Anderson and May also do not conflict with one another. While Anderson dealt with communication between a judge and a deliberating jury regarding trial exhibits and testimony, May addressed a judge's communication with a deliberating jury when that communication related to a pure question of law.

14

' . . . to the extent that a fair and just hearing would be thwarted by his absence.'"); Ross v. Dist. Attorney of the Cnty. of Allegheny, 672 F.3d 198, 212-13 (3d Cir. 2012) (considering whether a defendant's absence from a conference between trial judge, counsel, and juror resulted in unfairness to the defendant); United States v. Fernandez-Hernandez, 652 F.3d 56, 66 (1st Cir. 2011) cert. denied, 132 S. Ct. 353, (2011) (discussing factors relating to whether the defendant's absence from a bench conference with the judge, counsel, and jurors deprived him of his due process right to be present during trial); Moore v. Knight, 368 F.3d 936, 940-44 (7th Cir. 2004) (evaluating various case-specific circumstances to determine whether the defendant's trial was fundamentally unfair due to communications between the court and jury that occurred outside of the defendant's presence); United States v. Peterson, 385 F.3d 127, 138 (2d Cir. 2004) (reviewing whether a judge's private in-chambers conference with a juror violated the defendant's due process right to be present by considering the effect of that conference on the defendant's opportunity for a fair trial); United States v. Santiago, 977 F.2d 517, 522 (10th Cir. 1992) (discussing the circumstances surrounding the trial judge's ex parte questioning of a juror and the effect that questioning would have on the defendant's constitutional rights); United States v. Caldwell, 776 F.2d 989, 997 (11th Cir. 1985) (considering the brevity of communications between a juror and circuit judge, as well as other case-specific facts, to determine if the defendant's constitutional due process

rights had been violated); Nevels v. Parratt, 596 F.2d 344, 346 (8th Cir. 1979) (holding that defendant's absence from a hearing with a juror about possible juror misconduct violated the defendant's constitutional right to be present at all stages of his trial). This more nuanced approach allows for a due process analysis based on the individualized circumstances of each case and better conforms with our statement "that conferences of the court and attorneys outside the presence of the accused should be rarely held during the trial," Ramer, 40 Wis. 2d at 85, than does the majority's categorical approach.

¶71 Applying this approach, I would hold that due process gave Alexander the right to be present at the in-chambers conferences dealing with whether the jurors should continue to serve on the jury. Alexander's presence at these conferences was critical to the fairness of the proceedings. The importance of a defendant's presence at proceedings involving the selection of jurors and the continued service of jurors, which ultimately may affect the composition of the jury cannot be overstated. See Boone v. United States, 483 A.2d 1135, 1137-38 (D.C. 1984) (discussing the importance of the defendant's presence at voir dire); Welch v. Holman, 246 F. Supp. 971, 973-74 (M.D. Ala. 1965), aff'd 363 F.2d 36 (5th Cir. 1966) (discussing a defendant's right to be present during proceedings that involve juror qualifications).

¶72 Although I would hold that Alexander had a constitutional due process right to be present at the in-chambers conferences at issue, I have noted previously in this

16

opinion that a defendant may waive that right. <u>State v. Biller</u>, 262 Wis. 472, 479, 55 N.W.2d 414 (1952). I am satisfied on this record that Alexander did in fact waive his due process right, along with his statutory right to be present during the in-chambers conferences as evidenced by the record in this case.

### III. CONCLUSION

¶73 Alexander had both a statutory and a constitutional right to be present at each of the in-chambers conferences that occurred with sitting jurors during his trial for the purpose of determining the composition of the jury. His rights were waived for him by his counsel and by his own actions in voluntarily absenting himself. The Wisconsin legislature gave him the statutory right to be present "at trial," and the in-chambers conferences in question clearly occurred "at trial." Additionally, Alexander had a constitutional right of due process to be present at the in-chambers conferences because the circumstances of this case put it into the category of cases where "a fair and just hearing would be thwarted by his absence."[10]

¶74 For the reasons stated, I respectfully concur.

¶75 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this opinion.

---

[10] <u>Snyder v. Massachusetts</u>, 291 U.S. at 108.

17

¶76 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the majority opinion because, under the facts of this case, neither Alexander's constitutional right to due process nor his statutory right to be present at voir dire under Wis. Stat. § 971.04(1)(c) were violated.[1] I write separately to point out that even if we were to conclude that a constitutional or statutory protection was violated, the error in not having Alexander present, under these facts, is harmless.[2] Alexander is entitled to a fair trial and impartial jury, which he received.

¶77 "Judges face tough calls in the courtroom each day. Judges are charged with administering justice and have a concurrent goal of avoiding unnecessary appellate issues." State v. Tody, 2009 WI 31, ¶60, 316 Wis. 2d 689, 764 N.W.2d 737 (Ziegler, J., concurring). Here, to the extent that any issue arose as to the two jurors who were dismissed as alternates, the judge was properly attempting to avoid unnecessary appellate issues.

¶78 Alexander was involved in the selection of 14 jurors. He knew that any 12 of those 14 jurors would ultimately sit as the final jury in this case. Alexander had no particular right to have these two jurors remain on his jury. If anything,

_____

[1] Alexander did not argue that his right to be present at trial under Wis. Stat. § 971.04 was violated.

[2] I believe that judges around this state strive to include, not exclude, defendants and counsel when issues arise during the course of trial. This case illustrates why it is a good practice to include defendants and counsel, if possible, when matters arise during trial.

1

leaving these two alternates on the jury and dispensing with two other jurors would likely have created more issues than it resolved.  Twelve jurors, not fourteen, reach a verdict based upon the evidence and the law.  The trial court judge was correct to select these two jurors as the alternates.  Alexander received the fair and impartial jury to which he was entitled.

¶79  For the foregoing reasons, I respectfully concur.